The next matter, number 24-1413, Jacinto Xiquin Xirum et al. v. Pamela J. Bondi. At this time, would counsel for the petitioner please come to the podium and introduce himself on the record. Good morning, Your Honors. May it please the Court, Randy Olin for the petitioners. May I reserve two minutes? You may. Thank you. Your Honor, the agency has created an analytical framework for assessing whether or not the hardship in a cancellation of removal case satisfies the exceptional and unusual hardship standard. It's created factors that have to be considered in the analysis. And a fundamental principle underlying the entire analysis is that these factors must be considered in the aggregate. That is not what the agency did in this case. In fact, it did acknowledge hardship, several forms of hardship, but then it dismissed every one of them on the grounds that that hardship individually does not carry the day and satisfy the standard. In addition to that, it ignored others, completely ignored other standards. If I may give you examples, the Court did say that there was economic detriment. I hope to speak to this in a moment because the economic detriment in this case is devastating. But it said, it acknowledged there was economic detriment and said, but this alone is not enough. It acknowledged the ages of the children, which is a factor it has to consider. But it said that the ages cannot in and of itself satisfy the standard. It looked to the long residence of the petitioners, which it must do, and said that long residence of 30 years, nearly 30 years in this case, will not always guarantee that the standard will be satisfied. It noted, not very well, but it noted the adverse country conditions that exist in both Mexico and Guatemala as a factor to be considered, but then said, but adverse country conditions are insufficient in and of themselves. Then it said, spoke to the separation of the family and the emotional harm that the children will suffer, and said, but this is typical and not beyond the ordinary hardship that results from a deportation. But in this case, the mother is being deported to Mexico, the father is being deported to Guatemala, and the children, we think, will stay with their half sister in the United States. That's not typical. Counsel, let me just ask you about, I understand the language that you're pointing to in the decision that talks about each of the factors individually, but before the agency did that, at the beginning of that paragraph it said, the immigration judge considered in the aggregate the hardship to the respondents qualifying relative children, including the potential financial, medical, and emotional hardship. So the agency says the words in the aggregate, which you say is the correct test that it should be applying, and then talks about financial, medical, and emotional hardship. Why can't we look at that discussion by the agency and conclude that it did exactly what you're saying it was required to do? For two reasons. Number one, because he then went on to say, after making that bold assertion, he went on with every one of these factors and said individually it's not good enough. Secondly, and perhaps more importantly and more tellingly, every decision that comes out of the immigration court, and which is always ratified by the board, begins with the statement that I have considered all the evidence in this case, whether or not it's mentioned. And then we have cases in which seriously very, very important material, relevant evidence, like a psychological report or something like that, or a medical report, is not even mentioned. We cannot just buy that. It's in every single immigration court decision. I have considered all the evidence in totality. They're not. It's that simple. Is there any evidence that you are arguing the agency failed to consider here that you think is critical? What evidence in particular? First of all, one of the factors that was a very important factor in matter of overseen us and the grant of cancellation in that case was whether or not the petitioners could adjust their status or find another way to get back into the country. The agency did not mention that at all, completely ignored that factor, and as I say, it was very important to matter of overseen us. Again, the political and economic conditions in the countries of removal. I don't want to be disrespectful and say they paid lip service to it, but they said, yeah, there are adverse conditions. The fact of the matter is the conditions in both Mexico and Guatemala, these are two of the most troubled countries in the world. Mrs. Ramirez Santos' mother was murdered in Mexico. Do you not think it will affect the children in this case with the knowledge that their mother is going back to a country where their grandmother and her mother has been murdered? The economic issue is also one that was completely ignored, Your Honor. The petitioners testified credibly that they would suffer severe financial loss and would not be able to support their children. Well, the immigration judge said that the lowest standard of living, unless you can show how it's specifically applies to the children, it just doesn't satisfy the standard, and the government, for their part, says there's no evidence to support the claim that they won't be able to support their children. Well, here's what the record says, that the parents make over $1,100 a week in the jobs they have now in supporting their family. If Mrs. Ramirez Santos goes back to Mexico, according to the documentation, country conditions in the record, she can expect to make $14 a day in the type of work that she would be able to do there. That's not $1,100 a week. And with respect to Mr. Zyrum, he's going back to a country, he is of indigenous descent, he's going back to a country that among the indigenous community, 79% live in poverty, 40% live in extreme poverty. Mr. Olin, if I'm understanding your brief correctly, it read to me, which is a perfectly coherent ground for challenge, that you were simply taking Wilkinson at its word, which is that we get to review, albeit with some deference, the mixed fact law question of whether on these facts it meets the hardship test. Yes, and some deference being the key point there. Which is distinct from a procedural type challenge, which is the legal error in Harrison, failure to consider some factor, applying the wrong legal test, etc., all which are other possible grounds, but they may not be present in a given case, and they may not be what you have to rely on. So I took you to be relying on, at least at a minimum here, the straight up claim, it's a legal question, mixed fact law question, do you meet the standard, and you're saying on these facts we meet the standard, acknowledging we give some deference to the board, we should conclude otherwise. That's right. Okay, and we get that perfectly fine claim to make, we have jurisdiction over it after Wilkinson. My puzzlement is how we're supposed to decide it. What is our metric or criteria in your view for sorting, given that we're supposed to give some deference to the board, between those cases which meet the extraordinary and exceptional circumstance bar, and those that do not, when the board concludes they do not. I'm just a little bit, we haven't had a whole lot to say on that score in our prior decisions, and I appreciate you identify here's a bunch of factors, they sound significant. On the other hand, the board sees lots of these cases, it's got a very high bar, and we're supposed to give it some deference, so what are we supposed to do? That's a good question. In this case, I think the answer is not that difficult. Why, what is it about? Because of that, as I mentioned, the fundamental principle that you have to view these factors in the aggregate. It's very clear in this case, by their own words, by their own terms, that they viewed them individually and not in the aggregate. But now you're making, see that's a procedural challenge, and that's fine, we can address that if we think it's in your brief. But suppose I say no, that's not the error, and I take it that they did consider it in the aggregate. You still, I take it, are saying under Wilkinson it was error, even considered in the aggregate, because in these circumstances, notwithstanding the deference, it is, as a matter of law, an extraordinary circumstance. I'm trying to figure out what it is about this case that would enable us to say that, I recognize we can't say that about every case and plausibly be applying the standard. I think just viewing, the best answer I can give you, Judge, is viewing the evidence in the case and the application of that evidence to the hardship standard. It seems to me clear that it's an error of law in that it clearly does, viewing all the evidence, it clearly does satisfy the standard. That's my thing. Okay. My best answer to that. Thank you. Thank you. At this time, would counsel for the respondent please introduce herself on the record to begin. Good morning, Your Honors. May it please the Court. Remy DeRocha Afudu, representing the United States Attorney General. The petition for review should be denied, Your Honors. Could you get the microphone a little closer to me, please? Sure. Thank you. Petitioners failed to establish that the separation from their United States citizen children that could result from their removal would constitute exceptional and extremely unusual hardship. As the agency properly determined, any hardship to the children would not be substantially different from or be beyond that which normally accompanies the removal of a close family member. Two weeks ago, this Court issued a published decision in a similar case, Nalasco v. Bundy. There, the Court determined that petitioners in Nalasco failed to establish that their removal would result in exceptional and extremely unusual hardship to their qualifying relatives. The Court specifically noted that the standard is supposed to be hard to meet and that relief should be granted only in truly exceptional circumstances. The Court determined that a lower standard of living and emotional hardship are not unusual consequences of removal. As in Nalasco, there are no exceptional and extremely unusual circumstances or hardships presented here. Petitioners' two children are healthy and perform well in school, and they have an adult half-sibling with whom they could live here in the United States in the event of petitioner's removal. In the highly unlikely event that petitioners decide to take their children to Mexico or Guatemala, as the case may be, they still have not established the requisite exceptional and extremely unusual standards, hardship standard. As in Nalasco, the agency considered the children's varying degrees of proficiency in Spanish, the effect of Mexico or Guatemala's sociopolitical climate on the children, and the expected lower standard of living, and also the general difficulty of adjusting to life in another country. And the Court determined that any hardship resulting from those conditions are not exceptional and extremely unusual compared to that which would ordinarily result from an alien's removal. What about the fact that somewhere in the brief, but also it's mentioned in the opinion, one's Mexican and the other parent is from Guatemala, and there's no evidence that if they were removed, one would have to go to Mexico, probably the other, Guatemala. There's nothing that guarantees they would both go to the same country with their children, correct? Yes, Your Honor, and the immigration judge addressed that issue specifically and stated that petitioners did not present any evidence to show that they could not live in either country, and it was their burden to do so, and they just didn't, they were not prepared. Isn't that like something that's just simply obvious, logical, you don't have to present evidence, because it's, they're not from the other country, so they can't be removed to that country. Mexico's not going to take somebody from Guatemala automatically or vice versa. Yeah, the onus is on them, Your Honor, to present evidence that either one could not live in either country. They could have presented evidence showing what the laws are regarding a married couple living together in a country, you know, as it is in this country, but they presented no evidence whatsoever to the immigration judge, and so the judge had nothing, no basis to rule on that as affecting their... And also, in a similar vein to the country conditions, I assume your argument would be the same, that the petitioners did not present anything to change what, you know, to give another impression as to the country conditions, correct? Yes, Your Honor, because the court looked at that same issue in Alaska, the case that was just decided two weeks ago, and decided that those country conditions did not merit a grant of cancellation or removal based on hardship, because those, that hardship is not unusual, and it is not different from what people would, aliens would experience after leaving the United States. And so in this case, petitioners have pointed, have not pointed to anything in the record that would compel the conclusion that they have established a requisite level of hardship necessary to make a showing of their eligibility for cancellation or removal, and the court should deny the petition for review on that basis. To the extent that petitioners' claims that the court did not aggregate the, all the factors here, as Judge Rickleman pointed out, that is incorrect, because the board did point out specifically on page four of the record that the immigration judge considered those factors in the aggregate. And again, petitioners did not make that argument in their opening brief. They argued... Is there a statement in the immigration judge's decision stating that the immigration judge itself did consider them in the aggregate? The immigration judge on page 48 of the record did say that considering the record in its entirety, the court finds that a statutory eligibility for cancellation or removal based on a lack of exceptional and extremely unusual hardship to a qualifying relative. And so the agency is not required to write an exegesis on every contention, but to show that it has clearly considered the record and made a reasoned decision based on the record, and the agency did that in this case. And again, petitioners did not address that issue. They didn't raise that issue in their opening brief at all. In fact, petitioners did, to the extent that petitioners allege that the standard of review should be anything other than the substantial evidence standard of review. In their opening brief, they did state that substantial evidence is the standard to follow. And it wasn't until their reply brief that they then wavered and said it should be something less than that. But it is clear, after Wilkinson and Figurer in this court, that the standard of review is deferential. I know the court's still grappling with the issue of whether the standard of review should be substantial evidence, but the government's position is that that is the correct standard of review, because the hardship inquiry is primarily factual. And under Patel, the Supreme Court did state that that should be established. The court is without jurisdiction to review established facts. That's what cuts against it being substantial evidence, I think, since Wilkinson says we do have jurisdiction over these issues precisely because they're legal. Yes, Your Honor, but the Patel decision clearly stated that established facts could not be reviewed. Correct, but the application of the standard to the facts is what can be reviewed, which makes it hard for me to see how that's a factual question subject to substantial evidence. Yes, Your Honor, but even under any standard of review, petitioners have not shown that it established a requisite level of hardship, which this court two weeks ago said the standard is meant to be hard. And so giving all of this, Your Honor, we believe that the petition for review should be denied. Because petitioners, they don't meet the standard.  Thank you, Your Honor. Thank you, counsel, at this time would counsel for the petitioner please reintroduce himself on the record. He has a two-minute rebuttal. Thank you, Randy Olin, for the petition. It wasn't their burden to say what the law is in Mexico and Guatemala. The government is the one who chooses where to send the deportee. They chose to send the wife to Mexico. They chose to send the husband to Guatemala. I need to correct an erroneous statement by my sister that somewhere in my brief we said the substantial evidence standard applies. What we said in the brief is that no matter what standard of review applies, they met the standard. If I could follow up, Judge Barron, on your last question to me. It occurs to me that in addition to the procedural challenges that we make, one way for the family to be separated from their children, one way for the family to be separated from their children, there are other factors that are involved in addition to them? In addition to them. Where do you make those? I mean the factors themselves, my discussion of the factors themselves. It seems to me that we can also look to a matter of Montreal statement that the hardship has to be substantially beyond what would appear in the ordinary case. If we look to those factors, in this case, you get the family separation, not just separation, it's obliteration of this family. The economic devastation, this child, the boy, will never be able to go to college now. He's lost his ability to go to college, and on the numbers that are provided in the record, it's anyone's guess how they are possibly going to support their children. That is beyond ordinary, typical hardship. The same is true of the conditions in the countries. They're not going to the Dominican Republic or Jamaica. They're going to two of the worst, most dangerous countries in the world, where, as I said, her mother was murdered. And the fate of the children in this case is clearly beyond what is normally attended to removal. If I can say, go ahead. What does the record show about the earning potential of the husband, of the male petitioner in this case? First of all, he's not a young man. Secondly, he does not have the skills to be able to work at a job. He doesn't have the education. The most he's going to be able to do is work on some kind of an agricultural thing that, as I said, pays virtually nothing. The financial difference is going to be huge. May I have just a moment just to discuss the standard overview? I just want to point out that both the Administrative Procedures Act and the Immigration and Nationality Act have provisions that say that the substantial evidence standard applies to questions of fact, not to questions of law. We're dealing with a question of law here, and to graph that onto a legal question is completely inappropriate. I would also note local rights change and Chevron now being gone, and that Skidmore should apply. Thank you very much.